UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILDA SOJDA, on behalf of her daughter, VICTORIA SOJDA, a minor, <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO BOARD OF EDUCATION, a municipal corporation, <br><br> Defendant. | No. 23 CV 4231 <br><br> Judge Thomas M. Durkin |

### MEMORANDUM OPINION AND ORDER

Plaintiff Ilda Sojda ("Plaintiff") seeks damages against Defendant Chicago Board of Education for student-on-student harassment on behalf of her daughter Victoria Sojda ("Sojda"). R. 20. Defendant moves to dismiss the first amended complaint. R. 25. For the reasons stated below, Defendants' motion is denied in part and granted in part.

### Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of a complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim" to give the defendant "fair notice" of the claim and its basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

1

at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court "accept[s] all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the plaintiff. *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

Sojda was an eighth-grade student at Abraham Lincoln Elementary, a Chicago Public School. R. 20 ¶8. Sojda, a Hispanic student, was bullied by a Black student ("the Student"). *Id.* ¶¶ 12, 13. Prior to March 31, 2023, on numerous occasions, the Student made "threats of physical violence" and referred to Sojda using racial slurs such as "beaner" and "border jumper." *Id.* ¶¶ 14–15. The Student also made "threats of physical violence" and racially offensive comments to Sojda on social media platforms such as Snapchat. *Id.* ¶¶ 17–18. This caused Sojda to "fear[] for her physical safety during school hours." *Id.* ¶ 19. Sojda then met with her homeroom teacher to report the "bullying and violent threats." *Id.* ¶ 20. But following this meeting, the school did not intervene or discipline the Student. *Id.* ¶ 28.

On March 31, 2023, Sojda reported the "bullying and the violent threats" to the assistant principal. *Id.* ¶ 22. Sojda indicated that the bullying was "racially motivated due to [her] Hispanic background." *Id.* ¶ 23. That same day, the assistant principal met with the Student and disclosed Sojda's complaint. *Id.* ¶ 24. Later that day, the Student physically attacked and severely injured Sojda during school hours on school

2

property. *Id.* ¶ 41. Sojda was taken to a hospital to receive emergency medical treatment, and a physician recommended that Sojda miss "several days to weeks of school" to allow for "a slow and gradual . . . full recovery." *Id.* ¶¶ 64, 71. Following March 31, the Student was suspended for two days. *Id.* ¶ 57.

The Court dismissed the original complaint without prejudice. R. 19. Plaintiff now brings a first amended complaint with two counts. R. 20. First, Plaintiff alleges that Defendant is liable for student-on-student harassment under 42 U.S.C. § 2000d (Title VI of the Civil Rights Act of 1964). *Id.* ¶¶ 95–108. Second, Plaintiff alleges that Defendant is liable based on a *Monell* claim under 42 U.S.C. § 1983. *Id.* ¶¶ 109–121. Defendant moves to dismiss. R. 25.

## Discussion

### I. Student-on-Student Harassment

Title VI states: "No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000(d). Under Title VI, school boards may be liable for "student-on-student harassment." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). To state a claim, a plaintiff must plausibly allege that: (1) the harassment was discriminatory; (2) the harassment was so "severe, pervasive and objectively offensive that it" deprived the victims of access to educational opportunities; (3) the school officials had "actual knowledge" of the harassment; and (4) the school officials were "deliberately indifferent" to the harassment. *Id.* (citations omitted).

3

### 1. Discriminatory and Objectively Offensive

The racial harassment must be "so severe, pervasive, and objectively offensive [that it] undermines and detracts from the victims' educational experience, [and] that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999). In other words, the harassment must "have a 'concrete, negative effect' on the victim's education, which may include dropping grades, becoming homebound or hospitalized due to harassment, physical violence, or physical exclusion from a school resource." *C.S. v. Couch*, 843 F. Supp. 2d 894, 907 (N.D. Ind. 2011) (citing *Davis*, 526 U.S. at 654). Unless the "harassment is serious enough to deny its victims equal access to education," then "commonplace schoolyard altercations, including name-calling, teasing, and minor physical scuffles" are not actionable "even [if the] comments target differences in [race or] gender." *Galster*, 768 F.3d at 618 (citations omitted).

Defendant emphasizes that Plaintiff did not allege that "the Student used racial slurs during the March 31 [attack]" and argues that Sojda thus failed to plausibly allege that the attack, itself, was "motivated by a racial animus." R. 25 at 7. But, as alleged, the Student engaged in continued racial harassment that caused Sojda to fear for her safety and that culminated in a physical attack. Drawing all reasonable inferences in Plaintiff's favor, the Court can reasonably infer the attack was motivated by racial animus. And as alleged, the harassment had a concrete, negative effect in that it caused Sojda to receive hospital treatment and miss class. Plaintiff has plausibly alleged racial harassment that was objectively offensive.

4

### 2. Actual Knowledge and Deliberate Indifference

To hold a school board liable under Title VI, "'a school official who possessed the requisite control over the situation [must have] had actual knowledge of, and [must have been] deliberately indifferent to, the alleged harassment.'" *Couch*, 843 F. Supp. 2d at 913 (citing *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1247 (10th Cir. 1999)). School administrators such as principals and assistant principals likely have the requisite control required to hold a school board liable under Title VI. *See Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 457 (8th Cir. 2009) ("[S]chool principals are considered 'appropriate persons' in the Title IX [or Title VI] analysis."). "But whether that requisite is satisfied by a teacher having actual knowledge is less clear." *M.R. v. Burlington Area Sch. Dist.*, 2023 WL 3510642, at *20 (E.D. Wis. May 17, 2023). "Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX [or Title VI] liability is necessarily a fact-based inquiry." *Murrell*, 186 F.3d at 1247. "Where the victim is complaining about a fellow student's action during school hours and on school grounds, teachers may well possess the requisite control necessary to take corrective action to end the discrimination." *Id.* at 1248 (citations omitted).

Regarding actual knowledge, "[s]chool administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Galster*, 768 F.3d at 618. Regarding deliberate indifference, a school administrator is deliberately indifferent when his indifference, "at a minimum, cause[s] students to undergo harassment or make[s] them liable or vulnerable to it." *Davis*, 526 U.S. at

5

645. That said, the "standard of deliberate indifference sets a high bar for plaintiffs under Title VI and Title IX." *Galster*, 768 F.3d at 619. "To ensure that school administrators continue to enjoy the flexibility they require in making disciplinary decisions, the school will not be held liable unless its response to harassment is clearly unreasonable in light of the known circumstances." *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 911 (7th Cir. 2020) (citations omitted). Courts will not "second guess a school's disciplinary decisions" and "in appropriate cases, courts can identify a [disciplinary decision] as not clearly unreasonable as a matter of law. *Id.* at 912.

Regarding the homeroom teacher, the first amended complaint does not contain allegations as to whether the homeroom teacher had the requisite control for Title VI liability. The claim is saved, however, because the assistant principal was a school administrator who likely had the requisite control.

Focusing on the assistant principal, Defendant emphasizes that Plaintiff did not allege that Sojda told "the assistant principal about the Student's use of racial slurs" and argues that Plaintiff thus failed to plausibly allege actual knowledge that Sojda was "being harassed because of her race." R. 25 at 8. But drawing all reasonable inferences in Plaintiff's favor, the Court can reasonably infer Sojda informed the assistant principal as to the nature of the harassment. Plaintiff has thus plausibly alleged actual knowledge.

Following his conversation with Sojda, the assistant principal spoke with the Student. As alleged, the Student physically attacked Sojda shortly after speaking with the assistant principal. Drawing all reasonable inferences in Plaintiff's favor, it

6

is certainly plausible that the assistant principal's conversation with the Student escalated the situation and somehow prompted the physical attack. As stated above, deliberate indifference must, at a minimum, cause students to undergo harassment or make them vulnerable to it. Plaintiff has plausibly alleged such deliberate indifference.[1]

Because Plaintiff has plausibly alleged the required elements for student-on-student harassment, Defendant's motion to dismiss is denied on this issue.

## II. *Monell* Claim

A municipal organization like a school board may be liable for damages under a § 1983 *Monell* claim if the alleged unconstitutional act is caused by (1) an official policy; (2) a custom or practice that, though not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). As to the alleged unconstitutional act, Plaintiff contends that Defendant violated Sojda's right to equal protection under the Fourteenth Amendment because Defendant failed to discipline the Student based on a Chicago Public School ("CPS") "express policy and a common practice of favoring [Black] students in disciplinary matters," thus leading to Sojda's injury. R. 27 at 11.

---

[1] Defendant argues that it was not deliberately indifferent because, after the attack, it suspended the Student for two days, which Defendant contends was not clearly unreasonable as a matter of law. R. 25 at 8–9. At this stage, however, the Court need not determine if the suspension was reasonable. The claim survives based on the alleged deliberate indifference of the assistant principal prior to the attack.

Regarding the express policy, Plaintiff fails to identify any specific, official policy. *Id.* at 11–14. Instead, Plaintiff abstractly cites a CPS Discipline Improvement Plan ("Plan"). R. 20 at 78–83. The Plan is insufficient to support Plaintiff's position for the following reasons. First, the Plan does not articulate express, official policies but rather provides a generalized overview of CPS goals. *See, e.g., id.* at 82 ("CPS is in the process of expanding the yearly CPS Student Code of Conduct policy review process to assess how the district's discipline policies can be changed to reduce the use of school exclusion for students of color most impacted by disproportionality."). Second, although the Plan sets a general goal to reduce disproportionate impact, it never states that Black students should be treated more favorably than other students. To the contrary, it refers to historical data showing that Black students had been suspended "at much higher rates" than other students. *Id.* Third, to the extent the Plan does articulate a specific policy, it provides an example of a policy where CPS required "network chief approval when using catch-all codes for suspensions." *Id.* This policy imposes a general pre-requisite of "network chief approval" as a safeguard for the suspension of all students, not just Black students. Finally, Plaintiff failed to plead any facts connecting the Plan to this case. In other words, Plaintiff does not allege any facts suggesting that the Plan prevented the school from disciplining the Student in advance of March 31.

Regarding the common practice, Plaintiff alleges that Defendant has a "widespread practice by [its] agents, employees, and/or representatives under which [Black] students are not disciplined for their misconduct." R. 20 ¶ 113. In general, a

8

"single event is not enough to adequately allege a [widespread] custom or practice." *Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1074 (N.D. Ill. 2022). Rather, to succeed on a *Monell* claim of a widespread practice, a plaintiff must demonstrate that the "specific violations complained of were not isolated incidents" and "must allege facts that permit the reasonable inference that the practice is so widespread as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (dismissing *Monell* claim where plaintiff failed to "provide examples of other [officers] taking actions similar to those complained of here."). Here, Plaintiff describes only one event in which the failure to discipline took place—the facts specific to this case. And there are no other allegations in the complaint from which the Court can infer any wider practice than the circumstances at issue. Plaintiff thus fails to plausibly allege a widespread practice.

Because Plaintiff fails to plausibly allege that an official policy or widespread practice caused the violation of Sojda's right to equal protection under the Fourteenth Amendment, Plaintiff's *Monell* claim is dismissed.

## Conclusion

For the reasons stated above, Defendant's motion to dismiss (R. 25) is denied with respect to Count I of the first amended complaint and Plaintiff may bring a claim for student-on-student harassment. Defendant's motion to dismiss is granted with respect to Count II and Plaintiff's *Monell* claim is dismissed.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 26, 2024