**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ILDA SOJDA,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO BOARD OF EDUCATION,<br><br>Defendant. | No. 23 C 4231<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Ilda Sojda alleges that the Chicago Board of Education (the "Board") violated Title VI of the Civil Rights Act in the way it responded to Sojda's daughter's allegation of harassment by a classmate. The Board has moved for summary judgment. That motion is granted.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing

contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

Sojda's daughter, whose initials are V.S., was an eighth grade student at one of the Board's schools during school year 2022-23. On March 29, 2023, Sojda reported to V.S.'s teacher that another female student, whose initials are E.J., was harassing V.S. The girls were not in the same academic classes that year, but E.J. would threaten and call V.S. names as they passed in the hallway and on social media. V.S.'s teacher relayed the report to the school's vice-principal.

On March 31, the vice-principal interviewed both V.S. and E.J. separately. V.S. did not have copies of the harassing social media messages when she met with the vice-principal. And E.J. explained that any comments she made to V.S. were in response to comments V.S. made to her. The vice-principal told E.J. to stay away from V.S. while he interviewed additional students. He believed that his conversation with E.J. had de-escalated the situation. *See* R. 66-6 at 5 (13:11-13). He made a report about his investigation in the school's electronic reporting system.

Later that day E.J. physically assaulted V.S. V.S. was taken to the hospital and diagnosed with a concussion and a facial contusion.

E.J. was suspended from school for two days due to the assault. The school administration also prepared a "safety plan" for V.S., including having additional staff in the hallway during passing period, during recess, and in certain areas of the school where students gather. The school administration communicated with Sojda about V.S. returning to school.

A physician assistant cleared V.S. to return to school for in class instruction on April 10, 2023. However, a different physician assistant recommended that V.S. be excused from school April 10-14. Sojda sought a "homebound and hospital instruction plan" for V.S. On May 22, 2023, a doctor recommended that V.S. be allowed to learn from home until a formal safety plan and other measures are put in place, even though the school administration had already prepared a safety plan for V.S.

V.S. did not return to school that year because Sojda and V.S. believed it was unsafe. However, V.S. attended the class "graduation trip" to Washington, D.C., which E.J. did not attend. V.S. also attended all "other graduation activities except for schoolwide spirit week."

V.S. received physical therapy and mental health therapy after the assault. The parties dispute whether V.S.'s academic grades suffered as a result of the assault and V.S.'s subsequent lack of attendance. The parties also dispute whether the assault caused any "lifelong or long term side effects."

V.S.'s school is an elementary school offering only grades through eighth, meaning that V.S. could no longer attend the school once she completed eighth grade.

Instead of attending one of the Board's high schools, V.S. transferred to a private high school.

**Analysis**

Under Title VI, school boards may be liable for "student-on-student harassment." *See Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). The Seventh Circuit has explained that, to prove liability, a "peer-harassment plaintiff must demonstrate [1] that the harassment was discriminatory, [2] the school officials had "actual knowledge" of the harassment, [3] the harassment was "so severe, pervasive, and objectively offensive that it . . . deprive[ed] the victims of access to educational opportunities," and [4] officials were "deliberately indifferent" to the harassment. *Id.*

The Supreme Court, however, has set "a high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Id.* School officials are given broad latitude to resolve peer harassment and are liable only in "certain limited circumstances." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).[1] And district courts "should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 648. To that end, a school administration "will not be held liable unless its response to harassment was 'clearly unreasonable in light of the known circumstances.'" *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 911-12 (7th Cir. 2020) (quoting *Davis*, 526 U.S. at 648).

[1] In *Davis*, the Supreme Court addressed Title IX, not Title VI. However, courts apply the same standards to both Title IX and Title VI because they "operate in the same manner." *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).

Here, Sojda claims that V.S.'s school's administration "was deliberately indifferent to the harassment [of V.S.]" in that the vice-principal acted "unreasonably in not following the CPS Policy and failing to discipline E.J. prior to letting her leave his office." R. 71 at 11. According to Sojda, the school policy required the vice-principal to take "immediate action" in response to Sojda's report of harassment. *See* R. 71 at 10. She argues that the school's administration should have taken action on March 30, the day between Sojda's report to V.S.'s teacher on March 29 and the assault on March 31.

The problem with Sojda's claim is that the school administration did take action in that it investigated V.S.'s claim. Sojda cites school policy requiring "immediate action." But that policy also directs that an investigation occur before disciplinary action is taken. *See* R. 76 at 10-12 (¶¶ 54-55). That is what the school administration undisputedly did here after receiving Sojda's complaint on March 29—the administration investigated the complaint. In any event, non-adherence to policy does not in itself establish deliberate indifference or that the administration's actions were clearly unreasonable under the circumstances. *See Gebser*, 524 U.S. at 291-92 (1998) ("The [defendant school district's] alleged failure to comply with the regulations, however, does not establish the requisite actual notice and deliberate indifference.").

Furthermore, the vice-principal interviewed E.J. and directed her to stay away from V.S. The girls were not in the same academic classes, indicating that it should not have been difficult to keep them apart. And although V.S. alleged that E.J. had

"threatened" her, there is no indication the record that circumstances were such that the vice-principal should have known that E.J. would disobey his directive, let alone that she would do so in a violent manner. Even V.S., when she spoke with police after the assault, told them that prior to the assault she had believed that E.J.'s threats were empty. *See* R. 72 at 9 (¶ 47).

Sojda does not identify any facts or circumstances that suggest the vice-principal's decision to investigate and order E.J. to stay away from V.S. was unreasonable. In hindsight, of course, Sojda understandably wishes that different and more severe action had been taken that would have prevented her daughter's assault. But the Seventh Circuit has explained that federal law does not "entitle plaintiffs [in student-on-student harassment cases] to any specific remedial measure." *Galster*, 768 F.3d at 621. More specifically, the Seventh Circuit has affirmed a district court's grant of summary judgment to a school district in a student-on-student harassment case when an administrator investigated an allegation of bullying and verbally warned the accused students. *See Johnson*, 972 F.3d at 915 (7th Cir. 2020) ("[The principal] verbally warned students to leave [the plaintiff] alone when he felt it was required. He also determined at times, based on his investigation, that discipline was not necessary."). The Seventh Circuit explained that the administrator's "willingness to communicate" with the students making the allegations and "to investigate all claims of harassment," demonstrated that the administrator's response to the claims of harassment was not unreasonable. *See id.* And for that reason, the court would "not second guess his disciplinary decisions." *Id.*

Sojda has not pointed to any facts or circumstances requiring the Court to reach a different conclusion here. Within a day and a half of learning about V.S.'s allegations, the vice-principal initiated an investigation. He also warned E.J. to stay away from V.S. While the result was terrible for V.S., there is no factual basis for a reasonable juror to find that the vice-principal's actions were unreasonable such that the Board could be found to be deliberately indifferent.

## Conclusion

Therefore, the Board's motion for summary judgment [64] is granted. Judgment in favor of the Board's will be entered separately.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: September 14, 2026